

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-3070
Re: Construction of S. B. 99,
46th Legislature, with
respect to the right of
the Tax-Assessor-Collector
of Coleman County to make
payment directly to the
Central Colorado River Au-
thority of those collected
State taxes granted to the
District.

In your letter of January 22, 1941, you make the
following request for opinion:

" * * * *

"You will please advise us whether or not
in your opinion the bill (S. B. 99, 46th Leg.)
authorized this department to permit the Tax
Assessor-Collector to make payments of State
taxes collected by him to the River Authority,
as referred to in our letter of September 12,
1939, addressed to Mr. H. H. Brown, Tax Assessor-
Collector of Coleman County.  You will notice
from our letter of January 18, 1941, that we
have instructed Mr. Brown not to make further
payments to the Authority until after we receive
your opinion.

" * * * *."

Section 17-a of Senate Bill No. 99, is as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"For a period of ten years or for such
portion of such period as may be required,
but not longer, and commencing with the fis-
cal year beginning September 1, 1939, there
is hereby donated and granted by the State
of Texas to the Central Colorado River Author-
ity fifty (50%) per cent of all State ad valo-
rem taxes collected for general revenue pur-
poses upon the property and from persons in
the county of Coleman, including the rolling
stock belonging to railroad companies which
shall be ascertained and apportioned as now
provided by law. The taxes hereby donated
shall be used by the said Central Colorado
River Authority for the purpose of carrying
out the powers, duties and functions confer-
red upon said Authority by the Legislature
of this State."

It seems to have been the general practice of the
Legislature heretofore in similar legislation to provide for
the tax collectors of the affected counties to make payment
direct to the recipient municipal corporations or districts,
merely reporting such action to the Comptroller. Note the
Acts involved in Aransas Pass vs. Keeling, 247 S. W. 818;
Brazos River, etc., Dist. vs. McCraw, 91 S. W. (2d) 665;
Harris County Flood Control District vs. Mann, 140 S. W.
(2d) 1098. However, the Legislature in the Act under con-
sideration in this opinion has not provided specifically a
method for making payment of such granted taxes to the Au-
thority.

In the nature of the grant to the Authority it
was necessarily implied in the Act that actual payment of
the granted taxes should be made to the Authority. Whether
this actual payment is to be made directly by the Assessor-
Collector, or by the State Treasurer upon receipt of the
taxes from the Assessor-Collector, or in the ordinary course
of appropriation by the Legislature, is left to construction.
Obviously, some method was contemplated, for otherwise the
Act itself would be futile.

The general laws require the County Tax Collector at stated intervals to pay over to the State Treasurer all taxes collected by him for the State. Article 7249a, Vernon's Annotated Civil Statutes, and Articles 7260 and 7261, Revised Civil Statutes. Senate Bill 99 does not expressly repeal or modify the above statutes. Nor, in our opinion, does it do so by necessary implication. For the purpose of the Act may be fully accomplished, at the same time following Articles 7249a, 7260 and 7261. In this connection it may be well to observe that these moneys are collected for the State and it is on the theory that the purpose for which they will be expended is a State purpose that the validity of the Act may be sustained. Also, generally the State's disbursing agent is the State Treasurer.

The proper procedure, one which cannot be open to question, is for the Tax Assessor-Collector of Coleman County to remit all State taxes collected by him to the State Treasurer and to make reports to the Comptroller in the same manner as was done before the enactment of Senate Bill 99. The State Treasurer, on warrants drawn by the State Comptroller, will then pay such funds over to the District. No further appropriation by the Legislature will be necessary. Brazos River, etc., Dist. vs. McCraw, supra; Harris County Flood Control District vs. Mann, supra. At this point we would pause to say that if in either event an additional appropriation were necessary it would not be obviated by having the Collector make direct payment to the Authority. McCombs vs. Dallas County, 136 S. W. (2d) 975, 140 S. W. (2d) 1109.

We do not mean to say that the procedure suggested by you, for the County Tax Collector to make direct delivery to the District, is necessarily wrong. As already observed the Legislature expressly provided for that procedure in other similar grants, evidently in the view that express legislation was necessary for it to be handled in that manner. In view of this, and of Articles 7249a, 7260 and 7261, we entertain considerable doubt as to the propriety of adopting that method in this case. We have no such doubts concerning the procedure herein suggested; that is, for the Tax Collector to send the moneys to the State Treasurer and for the latter to make delivery to the Authority. The Treasurer and Comptroller may adopt their own proper means of keeping account and handle

Honorable George H. Sheppard, Page #4

the matter in such way as to effect delivery of warrants good at once to the Authority.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis
Assistant

GRL:ej

APPROVED MAR 21, 1941

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN